STEPHENS *v.* THE STATE.

The verdict was contrary to law and the evidence, and the refusal of a new trial was error.

Submitted October 3,—Decided October 13, 1898.

Indictment for murder. Before Judge Felton. Bibb superior court. April term, 1898.

*John R. Cooper,* for plaintiff in error.

*J. M. Terrell, attorney-general, Robert Hodges, solicitor-general,* and *Roland Ellis,* contra.

FISH, J. John Stephens was convicted of murder, with recommendation of life imprisonment. A motion for a new trial was overruled, and he excepted. The motion set forth that the verdict was contrary to law, decidedly against the weight of the evidence, and contrary to specified portions of the judge's charge; the last objection, of course, being equivalent to the second,—that the verdict was contrary to law.

We gather from the testimony of the witnesses for the State, that Kershaw, the deceased, and Carr, Adams and Morrissey were in Randall's bar, where the accused was an employee. Kershaw called for beer for the party, and deceased was requested to draw it. As he started to do so, Kershaw, according to one of the witnesses, said something about the accused being slow. Carr told the accused to get a move on him, and upon the accused asking him, in what Carr termed an insolent manner, what he had said, Carr reached over the bar counter, behind which the accused was standing, and struck or punched at him with his fist. Without waiting to get the beer, Kershaw and his friends started out, and Kershaw said to Carr, "son of a bitch," or, as one of the witnesses testified, "damn yellow son of a bitch, and didn't want to wait on us." The accused said, "You are narry one," or, "You are not a son of a bitch." Adams testified: "When he [the accused] said that, Kershaw turned to go back, and I caught hold of him and says, 'Jim, come on and let's go; don't go back there'; and he pulled loose and started back, and I caught him as he was going back from behind the grocery department to the bar, and as we walked behind [the counter?] I had hold of his right arm, and the negro had his gun to his shoulder and both barrels cocked, and he

was standing about center-way of the bar, and he backed towards the cooler, and he says, 'if you come on me I will shoot you'; and I turned him [deceased] loose, and he [the accused] shot." Carr testified: "When he [the accused] said that, Kershaw turned around and started towards him. I started to the door, and was in the act of stepping out of the door, when I heard some one say, 'If you come on me I will shoot you'; and Kershaw says, 'Yes, you will shoot me,' and kept on going. In the meantime I turned around and started back to him, and he was turning around the corner of the counter and grocery when I first had a glimpse of him, and I went on back there as quick as I could. Kershaw was turning the corner. He was standing there just as I turned around after the remark, 'If you come on me I will shoot you,' had been made. That is the best of my recollection. I started back towards him. Kershaw went on back behind the bar. He got about four feet, I suppose, in the bar,—three or four feet. The bar was about twenty feet deep between the partition side and the other side. I say he got about four feet when he was shot down." Kershaw, when shot, was about ten feet from the accused. In the opinion of the witnesses Kershaw weighed from 116 to 125 pounds. According to the testimony of the witnesses for the State Kershaw made no effort to draw a weapon, and none was found upon his person or near him by those who searched him some half-hour after he was shot. Carr, Adams and Morrissey were the only eye-witnesses to the homicide. Morrissey testified in behalf of the accused, and his testimony and the statement of the accused differed materially from the testimony of Carr and Adams.

We do not think the evidence for the State authorized a verdict for murder. The deceased began the altercation, was the aggressor in the difficulty, and at the time he was shot was advancing upon the accused, who was where he was employed to be, and who was backing from the deceased and warning him that he, the accused, would shoot if the deceased came on him. Under the State's evidence and the law, which the court correctly gave in charge, the homicide was not murder. Justice to the accused demands that a new trial be granted.

*Judgment reversed. All the Justices concurring, Simmons, C. J., dubitante.*